## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

| | |
|---|---|
| KENDRA KUMPULA, Individually and For Others Similarly Situated | **Case No.** _____ |
| v. | Jury Trial Demanded |
| VHS OF MICHIGAN, INC. d/b/a DETROIT MEDICAL CENTER | FLSA Collective Action Pursuant to 29 U.S.C. § 216(b) |

## ORIGINAL COLLECTIVE ACTION COMPLAINT

### SUMMARY

1.     Kendra Kumpula ("Kumpula") brings this collective action to recover unpaid overtime wages and other damages from VHS of Michigan, Inc. d/b/a Detroit Medical Center ("DMC").

2.     Kumpula worked for DMC as a Registered Nurse ("RN") at DMC's Sinai-Grace Hospital in Detroit, Michigan.

3.     Like the Putative Class Members (as defined below), Kumpula regularly worked more than 40 hours a week.

4.     But DMC did not pay them for all the hours they worked.

5.     Instead, DMC automatically deducted 30 minutes a day from these employees' recorded work time for so-called "meal breaks."

6.     Kumpula and the Putative Class Members were thus not paid for that time.

7.     But Kumpula and the Putative Class Members did not actually receive *bona fide* meal breaks.

8.     Instead, DMC required Kumpula and the Putative Class Members to remain on-duty and perform compensable work throughout their shifts, and DMC continuously subjected them to work interruptions during their unpaid "meal breaks."

9.     DMC's auto-deduction policy violates the Fair Labor Standards Act ("FLSA") by depriving Kumpula and the Putative Class Members of overtime wages for all overtime hours worked.

## JURISDICTION & VENUE

10.     This Court has original subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because this case involves a federal question under the FLSA. 29 U.S.C. § 216(b).

11.     This Court has specific personal jurisdiction over DMC with respect to this action because DMC employed Kumpula and the Putative Class Members in Michigan, and DMC conducts substantial business operations in Michigan.

12.     Venue is proper because a substantial portion of the events or omissions giving rise to this action occurred in this District and Division. 28 U.S.C. § 1391(b)(2).

13.     Specifically, DMC employed Kumpula in Detroit, Michigan, which is in this District and Division.

## PARTIES

14.     Kumpula worked for DMC as an RN at DMC's Sinai-Grace Hospital in Detroit, Michigan from approximately February 2020 until April 2023.

2

15.    Throughout her employment, DMC classified Kumpula as non-exempt and paid her on an hourly basis.

16.    Throughout her employment, DMC subjected Kumpula to its common practice of automatically deducting 30 minutes a day from her recorded work time for so-called "meal breaks."

17.    But throughout her employment, Kumpula did not actually receive *bona fide* meal breaks.

18.    Kumpula brings this collective action on behalf of herself and other similarly situated hourly, non-exempt DMC patient care employees who were subject to DMC's automatic meal break deduction policy.

19.    DMC automatically deducts 30 minutes a day from these employees' recorded work time for so-called "meal breaks."

20.    But these employees do not actually receive *bona fide* meal breaks.

21.    Thus, DMC uniformly deprives these employees of overtime wages for all hours worked after 40 in a workweek in violation of the FLSA.

22.    The putative collective of similarly situated employees is defined as:

> **All hourly, non-exempt employees who worked for, or on behalf of, DMC at any DMC facility[1] who received a meal period deduction at any time during the past 3 years ("Putative Class Members").**

---

[1] *See* https://www.dmc.org/locations (identifying all DMC healthcare facilities) (last visited September 27, 2023).

23.     DMC is a Delaware for-profit corporation that maintains its corporate headquarters in Dallas, Texas.

24.     DMC is registered to do business in the State of Michigan.

25.     DMC may be served with process by serving its registered agent: **The Corporation Company, 40600 Ann Arbor Road East, Suite 201, Plymouth, Michigan 48170**.

### COVERAGE UNDER THE FLSA

26.     At all relevant times, DMC was an "employer" within the meaning of Section 3(d) of the FLSA. 29 U.S.C. § 203(d).

27.     At all relevant times, DMC was an "enterprise" within the meaning of Section 3(r) of the FLSA. 29 U.S.C. § 203(r).

28.     At all relevant times, DMC was an "enterprise engaged in commerce or in the production of goods for commerce" within the meaning of Section 3(s)(1) of the FLSA, 29 U.S.C. § 203(s)(1), because DMC, had employees engaged in commerce or in the production of goods for commerce, or employees handling, selling, or otherwise working on good or materials—such as cellphones, computers, medical tools, and personal protective equipment—that have been moved in or produced for commerce.

29.     At all relevant times, DMC has had an annual gross volume of sales made or business done of not less than $1,000,000 each year.

30.     At all relevant times, Kumpula and the Putative Class Members were DMC's "employees" within the meaning of Section 3(e) of the FLSA. 29 U.S.C. § 203(e).

31.     At all relevant times, Kumpula and the Putative Class Members were engaged in commerce or in the production of goods for commerce.

32.     DMC uniformly deducted 30 minutes a day from Kumpula's and the Putative Class Members' recorded work time for meal breaks, even when these employees did not actually receive *bona fide*, non-interrupted meal breaks.

33.     As a result, DMC failed to pay Kumpula and the Putative Class Members wages (including overtime) for the compensable work they performed during their unpaid "meal breaks."

34.     DMC's meal break deduction policy, therefore, violates the FLSA by depriving Kumpula and the Putative Class Members of overtime wages for all hours worked after 40 in a workweek. 29 U.S.C. § 207(a) & (e).

## FACTS

35.     DMC is a for-profit alliance of hospitals that encompasses over 2,000 licensed beds, 3,000 affiliated physicians, and over 12,000 employees.[2]

---

[2] *See* https://www.dmc.org/about (last visited September 27, 2023).

36.     DMC operates various hospitals and healthcare facilities throughout the greater Metropolitan Detroit area.[3]

37.     To meet its business objectives, DMC hires patient care workers, including Kumpula and the Putative Class Members, to work in its various healthcare facilities.

38.     DMC uniformly classifies these patient care employees (including Kumpula and the Putative Class Members) as non-exempt and pays them on an hourly basis.

39.     While exact job titles and precise job duties may differ, these patient care employees are subjected to the same or similar illegal pay practices for similar work.

40.     For example, Kumpula worked for DMC as an RN at DMC's Sinai-Grace Hospital in Detroit, Michigan from approximately February 2020 until April 2023.

41.     As an RN, Kumpula's primary responsibilities included providing direct patient care to the patients at DMC's Sinai-Grace Hospital, such as checking vitals, conducting initial assessments, administering medications, monitoring patients, charting patients' histories and treatments, and generally assisting doctors and other patient care staff.

42.     Throughout her employment, DMC classified Kumpula as non-exempt and paid her on an hourly basis.

---

[3] *See* https://www.dmc.org/locations (identifying all DMC healthcare facilities) (last visited September 12, 2023).

43. Throughout her employment, DMC subjected Kumpula to its common practice of automatically deducting 30 minutes a day from her recorded work time for so-called "meal breaks."

44. But throughout her employment, Kumpula did not actually receive *bona fide* meal breaks.

45. Kumpula and the Putative Class Members perform their jobs under DMC's supervision and use materials, equipment, and technology DMC approves and supplies.

46. DMC requires Kumpula and the Putative Class Members to follow and abide by common work, time, pay, meal break, and overtime policies and procedures in the performance of their patient care jobs.

47. At the end of each pay period, Kumpula and the Putative Class Members receive wages from DMC that are determined by common systems and methods that DMC selects and controls.

48. DMC requires Kumpula and the Putative Class Members to record their hours worked using DMC's timeclock system.

49. Further, DMC subjects Kumpula and the Putative Class Members to a common policy and practice of automatically deducting time from their recorded hours worked for meal periods.

50.     Specifically, DMC automatically deducts 30 minutes a day from Kumpula's and the Putative Class Members' recorded work time and wages for so-called "meal breaks."

51.     DMC automatically deducts this time regardless of whether Kumpula and the Putative Class Members actually received full, uninterrupted, 30-minute meal breaks.

52.     DMC simply assumes Kumpula and the Putative Class Members receive *bona fide* meal breaks each shift they work.

53.     But Kumpula and the Putative Class Members do not actually receive *bona fide* meal breaks.

54.     Instead, DMC requires Kumpula and the Putative Class Members to remain on-duty and perform compensable work throughout their shifts.

55.     And DMC continuously subjects Kumpula and the Putative Class Members to work interruptions during their unpaid meal periods.

56.     In fact, even when Kumpula and the Putative Class Members attempt to take a meal break, DMC requires them to stay at the hospital and respond to facility-wide intercom pages, so DMC can contact them and instruct them to immediately return to work at any time (including during their unpaid "meal breaks").

57.     Because of these constant work interruptions, Kumpula and the Putative Class Members are not free to engage in personal activities during their unpaid meal periods.

58.    Rather, during their unpaid "meal breaks," Kumpula and the Putative Class Members are necessarily forced to substantially perform their regular patient care job duties and responsibilities.

59.    Thus, Kumpula and the Putative Class Members routinely spend their unpaid "meal breaks" performing work for DMC's—not these employees'—predominant benefit.

60.    This unpaid time is compensable under the FLSA because DMC knew, or should have known, that (1) Kumpula and the Putative Class Members were performing unpaid work during their "meal breaks," (2) they were interrupted or subject to interruptions with work duties during any attempted meal period, (3) they were not completely relieved of all duties during their "meal breaks," (4) they entirely skipped the meal period due to work demands, (5) the meal period was less than 20 consecutive minutes, (6) they were not free to engage in personal activities during their meal periods because of constant work interruptions, (7) they remained on DMC's premises or under DMC's supervision, and/or (8) they spent their unpaid meal periods substantially performing their regular patient care duties for DMC's predominant benefit.

61.    DMC fails to exercise its duty as Kumpula's and the Putative Class Members' employer to ensure these employees are not performing work that DMC does not want performed during their unpaid "meal breaks."

62. And DMC knows Kumpula and the Putative Class Members routinely perform work "off the clock" during their unpaid meal breaks because DMC expects and requires these employees to do so.

63. In fact, Kumpula and the Putative Class Members repeatedly complained to DMC's management and their supervisors about being forced to work during their unpaid "meal breaks."

64. Thus, DMC requested, suffered, permitted, or allowed Kumpula and the Putative Class Members to work during their unpaid "meal breaks."

65. Despite accepting the benefits, DMC does not pay Kumpula and the Putative Class Members for the compensable work they perform during their automatically deducted "meal breaks."

66. Thus, under DMC's uniform automatic meal break deduction policy, Kumpula and the Putative Class Members were, and are, denied overtime pay for those on-duty "meal breaks" during workweeks in which they worked more than 40 hours in violation of the FLSA.

67. In addition to excluding time from these employees' wages for "meal breaks," DMC also uniformly subjects Kumpula and the Putative Class Members to its automatic rounding policy.

68. Specifically, DMC automatically rounds Kumpula's and the Putative Class Members' recorded time punches to the nearest quarter hour in 7-minute increments for DMC's—not these employees'—primary benefit.

10

69.     In fact, in conjunction with DMC's automatic rounding policy, DMC also prohibits Kumpula and the Putative Class Members from clocking in and out for their shifts within more than 7 minutes of their scheduled shift start and end times.

70.     By enforcing these policies together, DMC ensures its automatic rounding policy *always* benefits DMC—and *never* benefits Kumpula and the Putative Class Members.

71.     Thus, under DMC's uniform automatic rounding policy, Kumpula and the Putative Class Members are denied overtime pay for all overtime hours worked during workweeks in which they work more than 40 hours in violation of the FLSA.

72.     Kumpula worked more than 40 hours in at least one workweek during the three years before this Complaint was filed.

73.     Likewise, each Putative Class Member worked more than 40 hours in at least one workweek during the three years before this Complaint was filed.

74.     Indeed, Kumpula and the Putative Class Members work 12.5-hour shifts for at least 3-4 days each workweek (or 37.5 to 50 hours).

75.     And Kumpula and the Putative Class Members regularly are also required to work "off the clock" during their unpaid meal breaks to complete their patient care job duties and responsibilities for DMC's predominate benefit.

76.     As a result, Kumpula and the Putative Class Members routinely work more than 40 hours in a typical workweek.

77.     When Kumpula and the Putative Class Members work more than 40 hours in a workweek, DMC does not pay them overtime wages for all overtime hours worked because DMC fails to include time these employees worked "off the clock" during their unpaid meal breaks in their total number of hours worked in a given workweek in willful violation of the FLSA.

### COLLECTIVE ACTION ALLEGATIONS

78.     Kumpula incorporates all other paragraphs by reference.

79.     Kumpula brings her claims as a collective action on behalf of herself and the Putative Class Members.

80.     The Putative Class Members were uniformly victimized by DMC's automatic meal break deduction policy, which is in willful violation of the FLSA.

81.     Other Putative Class Members worked with Kumpula and indicated they were paid in the same manner, performed similar work, and were subject to DMC's same automatic meal break deduction policy.

82.     Based on her experience with DMC, Kumpula is aware DMC's illegal practices were imposed on the Putative Class Members.

83.     The Putative Class Members are similarly situated in all relevant respects.

84.     Even if their precise job duties or locations might vary, these differences do not matter for the purposes of determining their entitlement to overtime.

85.     Therefore, the specific job titles or precise locations of the various Putative Class Members do not prevent collective treatment.

86.     Rather, the putative collective is held together by DMC's uniform automatic meal break deduction policy, which systematically deprived Kumpula and the Putative Class Members of overtime wages for all hours worked after 40 in a workweek.

87.     DMC's failure to pay overtime wages as required by the FLSA results from generally applicable, systematic policies and practices which are not dependent on the personal circumstances of the Putative Class Members.

88.     DMC's records reflect the number of hours the Putative Class Members recorded they worked each week.

89.     DMC's records also show that it automatically deducted 30 minutes a day from the Putative Class Members' recorded work time for meal breaks.

90.     Likewise, DMC's records show the specific times the Putative Class Members punched in and out for the shifts.

91.     And DMC's records show that it automatically rounded the Putative Class Members' recorded time punches for DMC's predominant benefit.

92.     The back wages owed to Kumpula and the Putative Class Members can therefore be calculated using the same formula applied to the same records.

93.     Even if the issue of damages were somewhat individual in character, the damages can be calculated by reference to DMC's records, and there is no detraction from the common nucleus of liability facts.

94.     Therefore, the issue of damages does not preclude collective treatment.

95.     Kumpula's experiences are therefore typical of the experiences of the Putative Class Members.

96.     Kumpula has no interest contrary to, or in conflict with, the Putative Class Members.

97.     Like each Putative Class Member, Kumpula has an interest in obtaining the unpaid wages owed to them under federal law.

98.     A collective action, such as the instant one, is superior to other available means for fair and efficient adjudication of the lawsuit.

99.     Absent this collective action, many Putative Class Members likely will not obtain redress for their injuries, and DMC will reap the unjust benefits of violating the FLSA.

100.    Further, even if some of the Putative Class Members could afford individual litigation against DMC, it would be unduly burdensome to the judicial system.

101.    Concentrating the litigation in one forum will promote judicial economy and consistency, as well as parity among the Putative Class Members' claims.

102.    The questions of law and fact that are common to each member of the Putative Class predominate over any questions affecting solely the individual members.

103.    Among the common questions of law and fact are:

      a.     Whether DMC engaged in a policy and practice of automatic time deductions for meal periods that were not *bona fide*, continuous, and uninterrupted in violation of the FLSA;

14

b.   Whether DMC's automatic meal break deduction policy deprived Kumpula and the Putative Class Members of pay for time worked during meal periods that were not *bona fide*, continuous, and uninterrupted in violation of the FLSA;

c.   Whether DMC knew, or had reason to know, Kumpula and the Putative Class Members were requested, suffered, permitted, or allowed to work "off the clock" during their unpaid meal breaks in violation of the FLSA;

d.   Whether DMC failed to pay Kumpula and the Putative Class Members overtime wages for all hours worked after 40 in a workweek, including those worked "off the clock" during their unpaid meal breaks, in violation of the FLSA;

e.   Whether DMC's decision not to pay Kumpula and the Putative Class Members overtime wages for all overtime hours worked was made in good faith; and

f.   Whether DMC's FLSA violations were willful.

104.   Kumpula knows of no difficulty that will be encountered in the management of this litigation that would preclude its ability to go forward as a collective action.

105.    As part of its regular business practices, DMC intentionally, willfully, and repeatedly engaged in a pattern, practice, and/or policy of violating the FLSA with respect to Kumpula and the Putative Class Members.

106.    DMC's illegal meal break deduction policy deprived Kumpula and the Putative Class Members of overtime wages for all hours worked after 40 in a workweek, which they are owed under federal law.

107.    There are many similarly situated Putative Class Members who have been denied overtime pay in violation of the FLSA who would benefit from the issuance of a court-supervised notice of this lawsuit and the opportunity to join it.

108.    This notice should be sent to the Putative Class Members pursuant to 29 U.S.C. § 216(b).

109.    Those similarly situated employees are known to DMC, are readily identifiable, and can be located through DMC's business and personnel records.

### DMC's FLSA Violations Were Willful and/or Done in Reckless Disregard of the FLSA

110.    Kumpula incorporates all other paragraphs by reference.

111.    DMC knew it was subject to the FLSA's overtime provisions.

112.    DMC knew the FLSA required it to pay employees, including the Putative Class Members, overtime wages at rates not less than 1.5 times their regular rates of pay for all hours worked after 40 in a workweek.

113.   DMC knew the Putative Class Members were non-exempt employees entitled to overtime pay.

114.   DMC knew the Putative Class Members were paid on an hourly basis.

115.   DMC knew each Putative Class Member worked over 40 hours in at least one workweek during the three years before this Complaint was filed because DMC required these employees to record their hours worked using its timeclock system.

116.   DMC knew the FLSA required it to pay employees, including the Putative Class Members, for all hours they performed compensable work.

117.   DMC knew that, as the Putative Class Members' employer, it had a duty to ensure these employees were not performing work "off the clock" (without pay) that DMC did not want performed.

118.   DMC knew it failed to provide the Putative Class Members with *bona fide*, uninterrupted meal breaks.

119.   DMC knew the Putative Class Members did not actually receive *bona fide*, uninterrupted meal breaks.

120.   DMC knew the Putative Class Members regularly worked during their unpaid meal breaks.

121.   DMC knew it requested, suffered, permitted, or allowed the Putative Class Members to work during their unpaid meal breaks.

122.    DMC knew the Puative Class Members regularly spent their unpaid meal breaks substantially performing their regular patient care job duties for DMC's predominant benefit.

123.    Indeed, DMC knew the Putative Class Members complained to DMC's management, HR, and/or their supervisors about being forced to work during their unpaid meal breaks.

124.    Thus, DMC knew, should have known, or recklessly disregarded the fact that the Putative Class Members performed compensable work during their unpaid meal breaks.

125.    Nonetheless, DMC automatically deducted 30 minutes a day from the Putative Class Members' recorded work time (and wages) for meal breaks.

126.    In other words, DMC knew, should have known, or recklessly disregarded the fact that it did not pay the Putative Class Members for all the hours they performed compensable work.

127.    DMC's decision to automatically deduct 30 minutes a day from the Putative Class Members' recorded work time for meal breaks was neither reasonable, nor was the decision to automatically deduct 30 minutes a day from the Putative Class Members' recorded work time for meal breaks made in good faith.

128.    DMC's failure to pay the Putative Class Members overtime wages for all overtime hours worked was neither reasonable, nor was the decision not to pay these employees overtime wages for all overtime hours worked made in good faith.

18

129.    DMC knew, should have known, or recklessly disregarded whether the conduct described in this Complaint violated the FLSA.

130.    DMC knowingly, willfully, and/or in reckless disregard carried out these illegal policies that deprived Kumpula and the Putative Class Members of overtime wages for all hours worked after 40 in a workweek in violation of the FLSA.

131.    Indeed, DMC and its affiliated entities (including its parent corporation, Tenet Healthcare Corporation) have been sued previously for failing to pay employees overtime wages in violation of the FLSA and analogous state wage and hour laws, including for DMC's same automatic deduction policy that is the subject of this collective action. *See*, *e.g.*, *Kaki, et al. v. Tenet Healthcare Corp., VHS of Mich., Inc., et al.*, No. 2:19-CV-10863 (E.D. Mich.).

## CAUSE OF ACTION
### FAILURE TO PAY OVERTIME WAGES UNDER THE FLSA

132.    Kumpula incorporates all other paragraphs by reference.

133.    Kumpula brings her FLSA claim on behalf of herself and the Putative Class Members pursuant to 29 U.S.C. § 216(b).

134.    DMC violated, and is violating, the FLSA by employing non-exempt employees (Kumpula and the Putative Class Members) in a covered enterprise for workweeks longer than 40 hours without paying such employees overtime wages at rates not less than 1.5 times their regular rates of pay for all hours worked after 40 in a workweek, including those worked during their unpaid meal breaks.

135.   DMC's unlawful conduct harmed Kumpula and the Putative Class Members by depriving them of the overtime wages they are owed.

136.   Accordingly, Kumpula and the Putative Class Members are entitled to recover their unpaid overtime wages under the FLSA in an amount equal to 1.5 times their regular rates of pay, plus an equal amount as liquidated damages, as well as attorney's fees and costs.

## JURY DEMAND

137.   Kumpula demands a trial by jury.

## RELIEF SOUGHT

WHEREFORE, Kumpula, individually and on behalf of the Putative Class Members, seeks the following relief:

a.   An Order designating this lawsuit as a collective action and permitting the issuance of a notice pursuant to 29 U.S.C. § 216(b) to all Putative Class Members with instructions to permit them to assert timely FLSA claims in this action by filing individual Consents to Sue pursuant to 29 U.S.C. § 216(b);

b.   An Order pursuant to Section 16(b) of the FLSA finding DMC liable for unpaid overtime wages due to Kumpula and the Putative Class Members, plus liquidated damages in amount equal to their unpaid overtime wages;

c.      Judgment awarding Kumpula and the Putative Class Members all unpaid wages, liquidated damages, and any other penalties available under the FLSA;

d.      An Order awarding attorney's fees, costs, and expenses;

e.      Pre- and post-judgment interest at the highest applicable rates; and

f.      Such other and further relief as may be necessary and appropriate.

Dated: September 27, 2023.

Respectfully submitted,

**JOSEPHSON DUNLAP LLP**

By: */s/ Michael A. Josephson*
Michael A. Josephson
TX Bar No. 24014780
Andrew W. Dunlap
TX Bar No. 24078444
11 Greenway Plaza, Suite 3050
Houston, Texas 77046
Phone: 713-352-1100
Fax: 713-352-3300
mjosephson@mybackwages.com
adunlap@mybackwages.com

Richard J. (Rex) Burch
TX Bar No. 24001807
**BRUCKNER BURCH PLLC**
11 Greenway Plaza, Suite 3025
Houston, Texas 77046
Phone: 713-877-8788
Fax: 713-877-8065
rburch@brucknerburch.com

Jennifer L. McManus (P65976)
**FAGAN MCMANUS, PC**
25892 Woodward Avenue
Royal Oak, Michigan 58067-0910
248-542-6300 – Telephone
jmcmanus@faganlawpc.com

*Local Counsel for Plaintiff*

William C. (Clif) Alexander*
TX Bar No. 24064805
Austin W. Anderson*
TX Bar No. 24045189
**ANDERSON ALEXANDER PLLC**
101 N. Shoreline Blvd., Suite 610
Corpus Christi, Texas 78401
361-452-1279 – Telephone
361-452-1284 – Facsimile
clif@a2xlaw.com
austin@a2xlaw.com

*\* Pro hac vice applications forthcoming*

**ATTORNEYS FOR KUMPULA AND THE PUTATIVE CLASS MEMBERS**